UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS F. LIOTTI, ESQ., on behalf of himself
and the Pro Bono Publico Bar Association, Inc.    19-cv-4264 (WFK) (LB)

                        Plaintiff,

    -against-

THE NASSAU COUNTY BOARD OF ELECTIONS;
THE NEW YORK STATE BOARD OF ELECTIONS;
THE NASSAU COUNTY REPUBLICAN COMMITTEE;
THE NASSAU COUNTY DEMOCRATIC COMMITTEE;
THE NASSAU COUTY CONSERVATIVE PARTY;
INDEPENDENCE PARTY OF NEW YORK STATE;
WORKING FAMILIES PARTY; and
THE BAR ASSOCIATION OF NASSAU COUNTY, INC.

                        Defendants.
-----------------------------------------------------------------X

## COMPOSITE MEMORANDUM OF LAW OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
and Thomas F. Liotti
By: Thomas F. Liotti, Esq.
Attorneys for the Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax: (516) 794-2816
tom@tliotti.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. i

Introduction ........................................................................................................................................ 1

Cross Endorsements Deceive Voters ............................................................................................. 3

The Function of Minor Political Parties ....................................................................................... 4

The Merit Selection of Judges in New York State ..................................................................... 8

Nassau's Deplorable Record on Voting Rights .......................................................................... 9

CONCLUSION .................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Breedlove v. Suttles,*
    302 U.S. 277 (1937) ............................................................................................................ 2

*Brown v. Board of Education,*
    347 U.S. 483 (1954) ....................................................................................................... 2, 3

*Grievance Comm. for the Ninth Judicial Dist. v. Mogil,*
    97-04366, 250 A.D.2d 343; 682 N.Y.S.2d 70 (1998) ............................................... 5

*Goosby v. Town Bd. Of the Town of Hempstead, NY,*
    956 F. Supp. 326 (E.D.N.Y.1997) ............................................................................... 10

*Goosby v. Town Bd. Of the Town of Hempstead, NY.*
    180 F. 3d 476 (2nd civ. 1999). .................................................................................... 11

*Jackson v. Nassau County Board of Supervisors,*
    818 F. Supp. 509 (E.D.N.Y., 1993) ............................................................................... 9

*Matter of Mogil,*
    88 N.Y.2d 749, 673 N.E.2d 896, 650 N.Y.S. 2d 611 (1996) ................................. 6

*Plessy v. Ferguson,*
    163 U.S. 537 (1896) ........................................................................................................ 3

*Roe v. Wade*
    410 U.S. 113 (1973) ........................................................................................................ 4

*White v. Regester,*
    412 U.S. 755, 769-70, 93 S. Ct. 2332, 2341, 37 L. Ed. 2d 314 (1973) .............. 10

**Constitution**

1st Amendment .................................................................................................................. 4, 10

8th Amendment ......................................................................................................................... 4

13th Amendment ..................................................................................................................... 10

14th Amendment .................................................................................................................. 3, 10

24th Amendment. ..................................................................................................................... 2

**Statutes**

22 NYCRR §151 ............................................................................................................. 8

42 U.S.C. § 1983 ...................................................................................................... 9, 10

**Secondary Sources**

Adam Liptar, *Supreme Court Test for Crucial Provision of Voting Rights Act*,
    The New York Times, March 1, 2021, at A13 ............................................................ 1

Anthony Miller, *Appellate Division Disbars Mogil*,
    The Attorney of Nassau County, January, 1999 at 3 ................................................ 6

*Black Robes, Back Rooms*,
    Newsday, September 19, 1999 at A4-5 ..................................................................... 7

Bowles, Pete, *Deposed Judge Loses Pistol Permit*,
    Newsday, October 31, 1996 at A28 ........................................................................... 5

Bowles, Peter, *Judge Fails To Win LI Libel Case*,
    Newsday, Long Island, August 21, 1996 at A23 ........................................................ 5

Chau Lam, *Cops: Judge Admits He Attacked Wife*,
    Newsday, May 200, 2000 ............................................................................................ 7

Chau Lam, *Judge, Wife Reunited, He Still Faces Stabbing Charges*,
    Newsday, July 29, 2000 at A3 ..................................................................................... 7

Chau Lam, *Delays In Case Against Judge, Jurist Accused of
    Stabbing Wife In Back*, Newsday, April 8, 2001 at A5 .............................................. 7

Chau Lam, *Indicted Judge Teaching Law, Kowtna's Students
    Express Surprise*, Newsday, July 14, 2001 ............................................................... 7

Chau Lam, *Judge Loses Bid To Dismiss His Stabbing Case*,
    Newsday, November 10, 2001 at A14 ....................................................................... 7

*Courting a Job? It's Who You Know*,
    Newsday, September 23, 1999 at A7, 46, 47 and 48 ................................................ 8

Deborah S. Morris, *Board Rejects Proposal to Limit Political Activity by Judges*,
    Newsday, February 25, 2021 at A20 .......................................................................... 8

Dionne Searcey, *Nassau Judge Arraigned In Stabbing*,
    Newsday, July 27, 2001 at A28 ................................................................................... 7

Freedman, Mitchell, *Did Judge Harass Lawyer*
    Newsday, September 11, 1995 .................................................................................. 5, 6

*Former Nassau County Court Judge B. Marc Mogil, Removed From The Bench in
    1996 for His Bizarre Harassment of Garden City Attorney, Thomas F. Liotti,
    Has Been Disbarred,* New York Law Journal, December 28, 1998 at 1 and 9 .................. 6

Goldstein, Matthew, *Removal of Nassau County Judge Urged by Judicial Conduct Panel*
    New York Law Journal, February 22, 1996 ................................................................ 6

Hoffman, Jan, *The Judge and the Lawyer: Some Not-So-Judicious Letters*
    The New York Times, February 22, 1996 ................................................................... 5

Jesse Wegman, *A History of Filibustering Democracy*,
    Opinion, The New York Times, February 9, 2021, at A20 ........................................... 2

John Sirica, *The Judges/Contrasting Styles: The Gentlemen and
    The Tough Guy/Paul Kowtna,* Newsday, December 13, 1999 ..................................... 7

John Sirica, *et al. The Judges/Politics and The Bench,*
    Newsday, September 20, 1999 at A07 ....................................................................... 7

*Judges & A Jury of Their Peers,*
    Newsday, September 22, 1999 at A7, 36 and 37 ........................................................ 8

*Judicial Discretion: A Life-or-Death Issue,*
    Liotti, Thomas F. and Madeo, Donald,
    New York Law Journal, Friday, September 8, 1992 at 1 &11, col.1. .............................. 4

*Justice, Politics, Case and the Bar,* Newsday,
    September 21, 1999 at A7, 30, 31, 32 and 33 ............................................................ 8

Kara Bond, *Suspended Nassau Judge Disbarred For Conduct,*
    Newsday, December 29, 1998 at A27 ........................................................................ 6

Kowal, Jessica, Around The Island - Crime & Courts,
    *Rare Decision Makes Judge's Case Public*
    Newsday, September 19, 1995 .................................................................................. 6

Kowal, Jessica, *Mogil: Liotti Asked to See Gun*
    Newsday, September 20, 1995, ................................................................................. 6

Kowal, Jessica and Tayler, Letta, *Devil Of A Time At Hearing*
    Newsday, September 21, 1995, ................................................................................. 6

Kowal, Jessica, *Of Lawyers and 'Looney Tunes*
    Newsday, September 22, 1995, .................................................................................. 6

Kowal, Jessica, *Judge Contradicted*
    Newsday, September 23, 1995, .................................................................................. 6

Kowal, Jessica, *Judge Claims Fax Is a Phoney*
    Newsday, September 16, 1995, .................................................................................. 6

Kowal, Jessica, *Ruling Against Judge*
    Newsday, December 22, 1995, .................................................................................. 6

Marcia Coyle, *Supreme Court Strikes Down Widely Mocked*
    *Texas Bid to Block Joe Biden's Win*,
    N.Y.L.J., December 15, 2020 at 2. ............................................................................. 1

Michael Frazier, *Attorney Fights Reinstatement of Former Judge*,
    October 31, 2007 at www.newsday.com ................................................................. 6

Michael Frazier, *Target of Judge's Ire Fights Restoring Law License*,
    Newsday, November 2, 2007 at A18. ...................................................................... 6

Miller, A. Anthony, *Court Strips Former Judge's Law License*,
    August, 1997 at 3 ........................................................................................................ 5

Miller, A. Anthony, *Court Of Appeals Ousts Mogil,*
    The Attorney of Nassau County, October, 1996 at 1 ............................................. 5

Milton, Pat, *Judge Linked To Threats Axed*
    Daily News, February 22, 1996, ............................................................................... 6

Nick Corasaniti, *Pushing to Tilt State's Courts to the G.O.P.*,
    February 16, 2021 at 1 and A17 ............................................................................... 3

New York State Bar Association, New York State Law Digest,
    *Vendetta Against Lawyer, Both Overt and Secretive,*
    *and Lying to Commission on Judicial Conduct, Costs County Judge His Job,*
    No. 443, November, 1996 at 3 .................................................................................. 5

Noah Feldman, *Courts Will Not Save Your Voting Rights*,
    Newsday, February 5, 2021 at A 27 ....................................................................... 12

Oscar Corral, Chau Lam and Jerry Markon, *Judge Arrested, Cops:*
    *He Stabbed Wife In Back With Kitchen Knife,* Newsday, May 19, 2000 ............. 7

Raoul Berger, *Government by Judiciary, The Transformation of the Fourteenth*

*Amendment*, (Liberty Fund, 1997) .................................................................................. 3

Robert D. McFadden, *Raymond Harding, 77 Dies;*
    *Liberal Party Power Broker*, The New York Times, August 9, 2012. ........................ 5

Robert Kessler, *Spota Judge to Unseal Burke Related Records,*
    Newsday February 25, 2021 at A8. ................................................................... 4

*Route to Bench: Take Party Line,*
    Newsday, September 20, 1999 at A6-7 ............................................................. 7

Tayler, Letta, *Markings Cited In Threat Letters*
    Newsday, September 13, 1995 ......................................................................... 6

Tayler, Letta, *Lawyer, Judge Square Off*
    Newsday, September 14, 1995 ......................................................................... 6

Tayler, Letta, *Lawyer Accused of Judge Bias*
    Newsday, September 15, 1995, ........................................................................ 6

Tayler, Letta, *Public Battle at the Bar*
    Newsday, September 18, 1995, ........................................................................ 6

Tayler, Letta, *Judicial Hearings Are Rare*
    Newsday, September 18, 1995; ........................................................................ 6

Tayler, Letta, *Judge Denies Devilish Threats*
    Newsday, September 19, 1995 ......................................................................... 6

Tayler, Letta, *Flamboyant Judge's Battle*
    Newsday, October 10, 1995, ............................................................................. 6

The Associated Press, *Judge's 60M Suit Is Tossed*,
    Daily News, Long Island, October 2, 1996 at QLI 1 ....................................... 5

*The Judges/How They Rate,*
    Newsday, December 13, 1999 at A06 .............................................................. 8

Theodore R. Johnson, *The Loneliness of the Black Senator,*
    The New York Times Magazine, January 24, 2021. ......................................... 1

Thomas F. Liotti, *America's Most Dangerous Place,*
    Verdict, April 2015 at 1, 3, 24-31. ..................................................................... 3

Thomas F. Liotti, *Judge Mojo: The True Story of One Attorney's*
    *Fight Against Judicial Terrorism* (iUniverse, 2007). ..................................... 6

Thomas F. Liotti and Madeo, Donald, *Judicial Discretion: A Life-or-Death Issue*,
    New York Law Journal, Friday, September 8, 1992 at 1 &11, col.1. ............................ 4

Topping, Robin, *Judge Is Flying Too High for Low Profile*
    Newsday, Around the Island, Crime & Courts, Sept. 28, 1995 ................................. 6

Topping, Robin, *Mogil's Fax To Foe Questioned*,
    Newsday, January 12, 1996 at A7 ........................................................................ 6

Topping, Robin, *Stop Practicing Law, Mogil Told*,
    Newsday, August 6, 1997 at A22. ........................................................................ 6

Topping, Robin, *State Panel Wants Judge Removed*
    Newsday, February 22, 1996, ................................................................................ 6

Topping, Robin, *Suspended Judge's Lawsuit Tossed Out*,
    Newsday, October 7, 1996 at A18 ........................................................................ 5

*Select Cast Gets Lucrative Roles*,
    Newsday, September 24, 1999 at A7 and 43 ...................................................... 8

Sherrilyn A. Ifill, *Lawyers Enabled Trump's Worst Abuses*,
    The New York Times, Op-ed, Monday, February 15, 2021 at A 21. ....................... 2

Slackman, Michael, Newsday, *High Court Reviews Ouster Case*,
    September 6, 1996 at A16 ................................................................................. 5

## INTRODUCTION

In 2020, our country witnessed a revolution in voting rights where mail in balloting was utilized during the pandemic in unprecedented numbers by African Americans and others enabling Joseph Biden, a Democrat, to win the Presidential election by more than 7 million votes. Similarly, on January 5, 2021, these enhanced voting rights allowed for the election of two Democrats from the State of Georgia to the United States Senate, including Rev. Raphael Warnock, a black man. Senator Warnock will be just the 11th black U.S. Senator in history. His victory came amid an attempt to delegitimize election results, a pattern that has been repeated for a century and a half. See Theodore R. Johnson, The Loneliness of the Black Senator, The New York Times Magazine, January 24, 2021.

Following Trump's resounding defeat, his supporters, including his attorney, Rudy Giuliani, made unfounded and unproven allegations of election fraud in all fifty states where their lawsuits were thrown out of Court. In a famous rebuking of Mr. Trump, even his three Justices whom he nominated to the Supreme Court of the United States, declined to hear his case due to lack of proof to support his claims of voter fraud. See Marcia Coyle, Supreme Court Strikes Down Widely Mocked Texas Bid to Block Joe Biden's Win, N.Y.L.J., December 15, 2020 at 2. See also Adam Liptar, Supreme Court Test for Crucial Provision of Voting Rights Act, The New York Times, March 1, 2021, at A13. Attached hereto as **Exhibit "D"**. See also Marcia Coyle, Sotomayor and Michael Carvin Spar in Key Voting Rights Argument, New York Law Journal, March 4, 2021 at 1 and 8 attached as **Exhibit "E"**.

But Trump and his supporters including extreme right wing, para military and other groups stormed the capitol on January 6, 2021 attempting to stop the confirmation of the Electoral College vote, threatening the lives of our elected representatives including Vice

1

President Michael Pence. Five people died as a result of this violent attack on our democracy. Donald Trump has been impeached for a second time and stood trial in the United States Senate for inciting this insurrection beginning on February 9, 2021. He and others may also face charges of treason as well. Trump was acquitted with 57 Senators voting to convict but short of the 2/3's vote needed to convict.

The actions of Donald Trump are a throwback to the Jim Crow South where blacks were killed for exercising their rights to vote. The poll tax was not declared to be illegal until 1964 when the 24th Amendment was adopted by the Congress. Remarkably before that time in 1937, in *Breedlove v. Suttles*, 302 U.S. 277 (1937) the Supreme Court of the United States declared that the poll tax, utilized by some states, to be constitutional. The poll tax like many other Jim Crow laws such as literacy tests, found their way into the north. See also, Jesse Wegman, A History of Filibustering Democracy, Opinion, The New York Times, February 9, 2021, at A20 (attached as **Exhibit "F"**).

"During their confirmation hearings, over two dozen Trump administration nominees to the federal bench refused to say that the landmark school desegregation case, *Brown v. Board of Education*, was correctly decided – despite universal acceptance that *Brown* is fundamental to the rule of law itself". See Sherrilyn A. Ifill, Lawyers Enabled Trump's Worst Abuses, The New York Times, Op-ed, Monday, February 15, 2021 at A 21. Ms. Ifill stated: "As a profession we must confront ourselves if lawyers are to be worthy of the mantle of leadership that is so routinely and unquestionably conferred upon us, and if we are to protect the rule of law in our democracy".

This *pro bono publico* lawsuit challenges the cross endorsements and nominations of state judicial candidates, particularly those with no prior judicial experience. Our current

2

system of electing state court judges is nothing more than a smoke screen which deprives the electorate of choices among judicial candidates.

Political bosses and elected officials throughout the nation are trying to limit voting rights and control who is elected to state court judgeships and nominated and confirmed for federal judgeships. Cross endorsements of judicial candidates are a part of the efforts to limit the right of vote. If elected officials and judges are all cross endorsed, then this is no longer a democracy. Our electoral process would then be akin to that of the Soviet Union if it is not already. See Nick Corasaniti, Pushing to Tilt State's Courts To the G.O.P., The New York Times, February 16, 2021 at 1 and A17. Copy attached hereto as **Exhibit "G"**.

## CROSS ENDORSEMENTS DECEIVE VOTERS

Republicans believe in Laissez Faire or limited government with lower taxes. Their judicial candidates who also call themselves conservatives believe in the literal language of laws and the Constitution rather than any extrapolation of them based upon changes in the common law or the current mores of society. On the other hand, Democrats believe that government should help to solve society's problems. Their platform consists of supporting the role of what economist John Maynard Keynes and President Franklin Delano Roosevelt espoused for government.

True conservatives such as Antonin Scalia believe that the Supreme Court wrongly decided *Brown v. Board of Education*, 347 U.S. 483 (1954) in that the original intent of the 14th Amendment had to do with contractual rights of freed negros and was not meant to overturn the separate but equal doctrine created by the holding of *Plessy v. Ferguson*, 163 U.S. 537 (1896). See Raoul Berger, Government by Judiciary, The Transformation of the Fourteenth Amendment, (Liberty Fund, 1997). Similarly, the true conservatives believe that

3

much of the Warren Court decisions from 1954-1969 were wrongly decided. See Thomas F. Liotti, America's Most Dangerous Place, Verdict, April 2015 at 1, 3, 24-31. **Exhibit "H".** Their view is that *Roe v. Wade* 410 U.S. 113 (1973) the pro-abortion decision, was incorrectly decided because it does not fit under the privacy clause of the First Amendment when the Bill of Rights was adopted in 1791. In fact, abortions were not known or at least not contemplated by our Founders. Similarly, death penalty statutes passed by the states or authorized by Federal statutes were not contemplated by the 8th Amendment which bars "the infliction of cruel and unusual punishment." See Liotti, Thomas F. and Madeo, Donald, *Judicial Discretion: A Life-or-Death Issue*, New York Law Journal, Friday, September 8, 1992 at 1 &11, col.1. Cross endorsements embolden candidates with a false belief that they are invincible and can do no wrong which ultimately can lead to corruption. See Robert Kessler, Spota Judge to Unseal Burke Related Records, Newsday February 25, 2021 at A8. **Exhibit "I".** Mr. Spota was cross endorsed in some of his campaigns for District Attorney in Suffolk County.

Voters are therefore deceived by the mislabeling of judicial candidates by Party labels amalgamating these different philosophies under cross endorsements. It is impossible for judicial candidates to embrace all of these philosophies or platforms which are inherently in conflict with one another. The voters are thereby deceived by this scheme.

## THE FUNCTION OF MINOR POLITICAL PARTIES

Aside from connoting a misleading label of candidates such as Liberal, Conservative, Right to Life, Independent, Green Party or Working Families, these political parties also have a shorter patronage line than the major political parties. When their officers give their party nomination to candidates from the major political parties, they receive paybacks in the form

of jobs or in some cases, judicial nominations. For example, Pat McCloskey was a Secretary of the Conservative Party. He arranged for Denis Dillon to receive his Party's nomination as a Democrat. Dillon went on to defeat William Kahn, the Republican candidate. Dillon then went on to serve for the next thirty years as District Attorney. Mr. McCloskey remained as one of his Chief Assistants in charge of hiring throughout the remainder of Dillon's tenure. Dillon later ran as a Right to Life candidate for Governor and then switched his registration to the Republican Party.

Jack Olchin was an officer in the former Liberal Party. In return for his Party's nomination, he remained a Deputy County Attorney for more than thirty years. Herbert Carr was Chair of the Liberal Party and in return for his Party's nominations, he commandeered for himself, a Supreme Court Judgeship.

The Liberal Party was founded by the legendary Alex Rose, head of the Ladies Garment Workers Union. Raymond B. Harding who succeeded Rose and until the Party was dissolved in 2002, parlayed his influence with government jobs in the Governor Hugh Carey and Mayor Rudolph Giuliani administrations. As a result of his efforts in helping to elect Mario Cuomo, Ed Koch, and John Lindsay, among many others, he received additional positions in government for himself and his sons. See, Robert D. McFadden, <u>Raymond Harding, 77 Dies; Liberal Party Power Broker</u>, The New York Times, August 9, 2012.

Justice Michele Woodard, a Liberal Party candidate won her election to the Supreme Court in 2000 with cross endorsements. She was defeated in 2014 without cross endorsements. B. Marc Mogil, a registered Conservative, won election to the Nassau District and later the County Court due to his work with Jack O'Leary, the former head of Nassau's

Conservative Party. O'Leary negotiated cross endorsements for him.¹ Mogil was removed from the Bench and disbarred. O'Leary testified for him during his hearings before the Judicial Conduct Commission.

---

¹ Mogil was removed from the County Court Bench and disbarred. See Grievance Comm. for the Ninth Judicial Dist. v. Mogil (In re Mogil), 97-04366, Supreme Court of New York, Appellate Division, Second Department, 250 A.D.2d 343; 682 N.Y.S.2d 70 (1998) LEXIS 13540, December 16, 1998, Decided. See, Freedman, Mitchell, Newsday, September 11, 1995, Did Judge Harass Lawyer?; Tayler, Letta, Newsday, September 13, 1995, Markings Cited In Threat Letters; Tayler, Letta, Newsday, September 14, 1995, Lawyer, Judge Square Off; Tayler, Letta, Newsday, September 15, 1995, Lawyer Accused of Judge Bias; Kwal, Jessica, Newsday, September 16, 1995, Judge Claims Fax Is a Phoney; Tayler, Letta, Newsday, September 18, 1995, Public Battle at the Bar; Tayler, Letta, Newsday, September 18, 1995, Judicial Hearings Are Rare; Tayler, Letta, Newsday, September 19, 1995, Judge Denies Devilish Threats; Kowal, Jessica, Newsday, September 19, 1995, Around The Island - Crime & Courts, Rare Decision Makes Judge's Case Public; Newsday, Editorial, September 20, 1995, Hearings on Judges' Misconduct Should Be Public; Kowal, Jessica, Newsday, September 20, 1995, Mogil: Liotti Asked to See Gun; Kowal, Jessica and Tayler, Letta, Newsday, September 21, 1995, Devil Of A Time At Hearing; Kowal, Jessica, Newsday, September 22, 1995, Of Lawyers and 'Looney Tunes'; Kowal, Jessica, Newsday, September 23, 1995, Judge Contradicted; Topping, Robin, Newsday, Around The Island, Crime & Courts, September 28, 1995, Judge Is Flying Too High for Low Profile; Tayler, Letta, Newsday, October 10, 1995, Flamboyant Judge's Battle; Kowal, Jessica, Newsday, December 22, 1995, Ruling Against Judge; photo and caption, Disciplinary Panel Urged to Recommend Nassau Judge's Removal, January 12, 1996 at 6; Topping, Robin, Mogil's Fax To Foe Questioned, Newsday, January 12, 1996 at A7; Topping, Robin, Newsday, February 22, 1996, State Panel Wants Judge Removed; Milton, Pat, Daily News, February 22, 1996, Judge Linked To Threats Axed; Goldstein, Matthew, New York Law Journal, February 22, 1996, Removal of Nassau County Judge Urged by Judicial Conduct Panel; Hoffman, Jan, The New York Times, February 22, 1996, The Judge and the Lawyer: Some Not-So-Judicious Letters; Matter of the Proceeding Pursuant to §44, subdivision 4, of the Judiciary Law in Relation to B. Marc Mogil, a Judge of the County Court, Nassau County, New York Law Journal, Disciplinary Proceedings (for full decision), February, 26, 1996; Daily News, Long Island Section, 'Hate Mail' Judge Suspended, March 27, 1996 at A24; New York Law Journal, Today's News, March 27, 1996 at 1; Miller, A. Anthony, The Attorney of Nassau County, Judge Marc Mogil Appeals Ouster, March, 1996; Bowles, Peter, Judge Fails To Win LI Libel Case, Newsday, Long Island, August 21, 1996 at A23; Slackman, Michael, Newsday, High Court Reviews Ouster Case, September 6, 1996 at A16; The Associated Press, Judge's 60M Suit Is Tossed, Daily News, Long Island, October 2, 1996 at QLI 1; Topping, Robin, Suspended Judge's Lawsuit Tossed Out, Newsday, October 7, 1996 at A18; Bowles, Pete, Deposed Judge Loses Pistol Permit, Newsday, October 31, 1996 at A28; Miller, A. Anthony, Court Of Appeals Ousts Mogil, The Attorney of Nassau County, October, 1996 at 1; New York State Bar Association, New York State Law Digest, Vendetta Against Lawyer, Both Overt and Secretive, and Lying to Commission on Judicial Conduct, Costs County Judge His Job, No. 443, November, 1996 at 3; Miller, A. Anthony, Court Strips Former Judge's Law License, August, 1997 at 3; Suspension and prosecution for disbarment ordered by the Appellate Division, Second Department (By Mangano, P.J.; Bracken, Rosenblatt, Miller and Ritter, J.J.). The Appellate Division, among other things, stated: "The respondent also committed actions involving dishonesty, fraud, deceit, or misrepresentation in that he repeatedly gave false testimony under oath to the Commission on Judicial Conduct during its investigation and reported false information to the Nassau County Police Department." See New York Law Journal, August 1, 1997 at 23; Topping, Robin, Stop Practicing Law, Mogil Told, Newsday, August 6, 1997 at A22. An article concerning the suspension of former Judge Mogil from the practice of law and the Appellate Division authorizing the Grievance Committee to initiate disbarment proceedings against Mogil. See Today's News, New York Law Journal, August 6, 1997 at 1. See also, Former Nassau County Court Judge B. Marc Mogil, Removed From The Bench in 1996 for His Bizarre Harassment of Garden City Attorney, Thomas F. Liotti, Has Been Disbarred, New York Law Journal, December 28, 1998 at 1 and 9; Kara Bond, Suspended Nassau Judge Disbarred For Conduct, Newsday, December 29, 1998 at A27 and A. Anthony Miller, Appellate Division Disbars Mogil, The Attorney of Nassau County, January, 1999 at 3. New York Court of

While there are many other examples of denials of voting rights in judicial races, three more are worth illustrating here. First, Supreme Court Justice Joseph Lorintz ran three times for Judicial office and lost each time. Finally, in 2016 with cross endorsements he won but had no prior judicial experience. In 2014 acting Supreme Court Justice Thomas Rademaker ran a campaign for a judgeship in the Nassau County Family Court Bench with cross endorsements and won. He had no prior judicial experience. In 2017 he ran a campaign for the Supreme Court without cross endorsements and with only one line on the ballot as a Conservative Party candidate and he lost. In 2017 Gary Knobel ran for election to the Supreme Court without Cross endorsement and lost. In 2020 with cross endorsements, he won.

This is a microcosm of a Nassau County State Court judiciary which is riddled with judges who are the friends and family members of political bosses. Our system then creates more corruption within the system, for example, by young lawyers who see a path to a judgeship for themselves by joining a political party; staying below the radar and making campaign contributions to win judicial Clerkships and advance to the judiciary. The record shows that unpopular candidates for judicial office win with cross endorsements[2].

---

Appeals decision, Matter of Mogil, 88 N.Y.2d 749, 673 N.E.2d 896, 650 N.Y.S. 2d 611 (1996). Docket number for Appellate Division disciplinary matter (97-04366). Hearing held on March 23, 1997 and October 15, 1997 before Special Referee, Hon. Morrie Slifkin re: disbarment proceeding of B. Marc Mogil. Letter To the Editor, Newsday, April 27, 2000 at A46 entitled: Witness Protection. The letter suggests Judicial Disciplinary Hearings may be open to the public, as Newsday suggested in an editorial, providing complaints are screened, pass preliminary stages and negative character testimony about complaining witnesses, unless germane to the changes, should be disallowed. Michael Frazier, Attorney Fights Reinstatement of Former Judge, October 31, 2007 at www. newsday.com and Michael Frazier, Target of Judge's Ire Fights Restoring Law License, Newsday, November 2, 2007 at A18. See also Thomas F. Liotti, Judge Mojo: The True Story of One Attorney's Fight Against Judicial Terrorism (iUniverse, 2007).

[2] Also, see John Sirica, The Judges/Contrasting Styles: The Gentlemen and The Tough Guy/Paul Kowtna, Newsday, December 13, 1999; Oscar Corral, Chau Lam and Jerry Markon, Judge Arrested, Cops: He Stabbed Wife In Back With Kitchen Knife, Newsday, May 19, 2000; Chau Lam, Cops: Judge Admits He Attacked Wife, Newsday, May 200, 2000; Chau Lam, Judge,Wife Reunited, He Still Faces Stabbing Charges, Newsday, July 29,

7

Judges are supposed to avoid appearances of impropriety yet they do not disclose campaign contributions by the lawyers or litigants appearing before them and do not recuse themselves but instead reward their benefactors with favorable rulings and assignments. See 22 NYCRR §151. See also Deborah S. Morris, Board Rejects Proposal to Limit Political Activity by Judges, Newsday, February 25, 2021 at A20, attached as **Exhibit "J"**.

## THE MERIT SELECTION OF JUDGES IN NEW YORK STATE

Action Unit #4 was proposed by Governor Mario Cuomo and endorsed by the New York State Bar Association during the tenure of John Bracken, its former President at the time. Action Unit #4 was not supported by the Nassau County Bar Association or other local bar associations. When I offered its adoption by a Resolution before the Nassau Lawyers Association it was met by a comment from the Hon. Joseph Goldstein (dec.) to the President of the Association at the time, Joseph Covello, later an Associate Justice of the Appellate Division, Second Judicial Department, to wit, "Joe, if the state Legislature adopts Action Unit #4, you and I could never become judges." Covello then appointed Anthony Falanga to review action Unit #4. In 1995 Covello and Falanga were both elected to the Nassau District Court with cross endorsements by the Republican and Conservative parties. Action Unit #4 was

---

2000 at A3; Chau Lam, Delays In Case Against Judge, Jurist Accused of Stabbing Wife In Back, Newsday, April 8, 2001 at A5; Chau Lam, Indicted Judge Teaching Law, Kowtna's Students Express Surprise, Newsday, July 14, 2001; Dionne Searcey, Nassau Judge Arraigned In Stabbing, Newsday, July 27, 2001 at A28; and Chau Lam, Judge Loses Bid To Dismiss His Stabbing Case, Newsday, November 10, 2001 at A14. Also, John Sirica, *et al.* The Judges/Politics and The Bench, Newsday, September 20, 1999 at A07; Black Robes, Back Rooms, Newsday, September 19, 1999 at A4-5; Route to Bench: Take Party Line, Newsday, September 20, 1999 at A6-7; Justice, Politics, Case and the Bar, Newsday, September 21, 1999 at A7, 30, 31, 32 and 33; Judges & A Jury of Their Peers, Newsday, September 22, 1999 at A7, 36 and 37; Courting a Job? It's Who You Know, Newsday, September 23, 1999 at A7, 46, 47 and 48; Select Cast Gets Lucrative Roles, Newsday, September 24, 1999 at A7 and 43 and The Judges/How They Rate, Newsday, December 13, 1999 at A06. John Sirica, the author of the Newsday articles is the son of Judge John Sirica, the famous and highly acclaimed "Watergate Judge".

8

never heard from again. Falanga and Covello later became Supreme Court Justices, again with cross endorsements. Covello was later elevated to the Appellate Division all as a result of his campaign work on behalf of B. Marc Mogil and Jack O'Leavy. Covello had been an Associate in the law firm of Dean, Falanga and Rose.

## NASSAU'S DEPLORABLE RECORD ON VOTING RIGHTS

*In Jackson v. Nassau County Board of Supervisors,* 818 F. Supp. 509 (E.D.N.Y., 1993), Judge Arthur Spatt (dec.) of this Court determined that Nassau's weighted voting system was unconstitutional. In reaching that determination the Court found that the County's system of weighted voting by its then Board of Supervisors violated the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §1983 as follows:

> The Equal Protection Clause of the Fourteenth Amendment provides as follows:
> "Section 1. ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the **\*530** United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
> The plaintiffs also seek redress under 42 U.S.C. § 1983, which provides in pertinent part as follows:
> "§ 1983. Civil action for deprivation of rights
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ..."
>
> The Court finds that the statistical applications utilized in the voting pattern of the Nassau County Board of Supervisors are not only artificial and contrived, but are completely incomprehensible to most citizens, and impossible to fathom except by experts. The Board cannot work on the basis of a simple majority, usually the standard in most legislative bodies, because allocating 55 votes to the Town of Hempstead insures that Hempstead would control every vote taken. Conversely, creating a "supermajority" of 65 votes insures that the residents of Hempstead will

9

forever be underrepresented on the basis of population in any vote taken. There are basic flaws in the structure of this system.

Judge Spatt's decision resulted in the creation of the County Legislature which then created representative districts throughout the County and which was modeled after a pre-existing County Legislature in neighboring Suffolk County. The Board of Supervisors which gave all of its weighted votes to the Town of Hempstead disenfranchised voters in the Towns of Hempstead, North Hempstead, Oyster Bay and the cities of Long Beach and Glen Cove.

In *Goosby v. Town Bd. Of the Town of Hempstead, NY*, 956 F. Supp. 326 (E.D.N.Y.1997) District Judge John Gleeson, formerly of this Court held:

> This is an action brought under Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1983, and the First, Thirteenth, and Fourteenth Amendments to the United States Constitution. Plaintiffs, African-American citizens of the Town of Hempstead (the "Town"), challenge the at-large voting practice used in the Town to elect the six Council-members who sit on the Town Board of the Town of Hempstead (the "Town Board"). Plaintiffs contend that this system dilutes the voting strength of the minority population in the Town in violation of the Voting Rights Act, and seek an order directing the implementation of a single-member district election system.
> African-Americans in the Town of Hempstead have no right to be represented on the Town Board. They have no right to be protected from political defeat at the polls, even if that defeat is total and persists for decades. African-Americans do have a right, however, which is protected by Section 2 of the Voting Rights Act of 1965, to an even playing field. They have a right to be given a fair shake by the political processes leading to nominations and elections to the Town Board.
> Determining whether an at-large election scheme violates that right requires "an intensely local appraisal" of the impact such a scheme has "in the light of past and present reality, political and otherwise." *White v. Regester*, 412 U.S. 755, 769-70, 93 S. Ct. 2332, 2341, 37 L. Ed. 2d 314 (1973). Having conducted the careful and searching appraisal mandated by Section 2, I have a definite and firm conviction that the at-large scheme employed for Town Board elections in Hempstead has operated to invidiously exclude blacks from effective participation in political life in violation of Section 2.
> Accordingly, the Town Board is hereby ordered to submit to the Court a remedial plan that divides the Town into six single-member districts.

10

In affirming Judge Gleeson's well-reasoned and thorough decision, the Second Circuit found in a decision by Judge Miner, joined in by Judge McLaughlin with a concurrence by Judge Leval as follows:

> "In evaluating all of the relevant facts as a whole, including the size of the Town, the absence of geographic subdistricts, the lack of access by blacks to the Republican Party slating process, the unfortunate use of racial appeals in political campaigns, the lack of responsiveness by the Town Board to the particularized needs of the black communities, and the stated desire by the Town government to cling to a monolithic, single-voice legislature for a heterogeneous population consisting of many different communities and voices, I conclude that black citizens' failure to elect representatives of their choice to the Town Board is not best explained by partisan politics." Opinion. *Goosby v. Town Bd. Of the Town of Hempstead, NY.* 180 F. 3d 476 (2nd civ. 1999). For his part Judge Leval was also appealed by the defendant's discriminatory tactic in depriving blacks of an elected representative on the Town Board. Judge Leval held:

> "In the totality of the circumstances, the defendants failed to show that racial motivation was not a cause of blacks' persistent defeat at the polls. As Judge Gleeson noted, it appears that in Hempstead, "race-neutral factors, such as political partisanship . . . co-exist with race-based ones, such as diminished access to the slating process or insensitivity by elected officials to the particularized needs of the minority community." Under section 2, it is necessary to find only that (1) the complete failure of blacks to elect the candidates of their choice to the Town Board, despite their electoral cohesiveness and strength, satisfied the plaintiffs' burden on the first three elements of a violation through vote dilution, and (2) defendants' evidence failed to demonstrate the absence of race-based intentions as a contributing cause. I believe plaintiffs proved a section 2 violation."

The Bar Association of Nassau County did not seek to intervene in the *Jackson* or *Goosby* cases. The Nassau County Board of Elections fought against the plaintiffs because for them and the Bar Association they are whetted to discriminatory voting practices engineered in the Jim Crow south and adopted here by the Republican Party. But over time the dynamics of voting practices have of changed in that the Democratic and minor political

11

parties realized they too could benefit by cutting deals with the Republicans with cross endorsements and other *status quo* discriminatory practices. The evils of these cross-endorsement policies can be seen more directly when quasi-judicial candidates such as a District Attorney is cross endorsed. Thomas Spota, the disgraced former District Attorney in Suffolk County was cross endorsed, but later convicted of federal crimes and is awaiting sentencing.

According to the Brennan Center for Justice, legislatures across the country are now considering the adoption of laws aimed at restricting voter access in light of Democratic victories in 2020. See Noah Feldman, *Courts Will Not Save Your Voting Rights*, Newsday, February 5, 2021 at A 27. **Exhibit "K"**. Also, see **exhibit "L"** Amended Verified Complaint.

## CONCLUSION

Cross endorsements preclude voters from having choices among candidates for judicial and other offices. This is denial of voting rights and anti-democratic. Cross endorsements permit political bosses to decide who our state judges shall be which then leads to favoritism, the appearance of impropriety and in some cases even corruption.

Dated: Garden City, New York
March 12, 2021

*[signature]*

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
*Pro Se, Pro Bono Publico*
Attorney for the Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax:    (516) 794-2816
tom@tliotti.com

12